RICHARD B. OSBORNE

*v.*

PATRICK O'REILLY.

1. Construction of a contract by which complainant was to receive a certain percentage on the contract price for building a railroad.

2. A witness cannot, without leave of the court, be re-examined on a matter as to which he has been previously examined; but the ground of objection must be specifically stated when he is re-called, or his testimony will not be excluded. The rule, however, does not prevent the re-calling of a witness in rebuttal.

Bill for relief.   On final hearing on pleadings and proofs.

*Mr. A. Browning,* for complainant.

*Mr. P. L. Voorhees,* for defendant.

THE CHANCELLOR.

The bill is filed for an injunction to stay proceedings in a foreign attachment, issued out of the supreme court by Patrick O'Reilly, the defendant in this suit, against Richard B. Osborne, the complainant, and for an account. The indebtedness sworn to, to obtain the attachment, was $10,000. That suit was brought to recover moneys which, if the allegations of the bill be true, have been paid, and would be embraced in the account which the complainant seeks. The complainant alleges that on the 1st of September, 1852, he made a contract (which, however, was not then reduced to writing) with the Camden and Atlantic Railroad Company (incorporated on the 19th of March in that year), to construct their road from Cooper's Point, in Camden, to Absecon Beach, for $241,340, including $20,000 for the erection of terminal and water stations, of which contract price eighty per cent. was to be paid in cash, on monthly estimates,

and the remainder to be retained as security for the due performance of the contract, until the completion of the work, and then it was to be paid one-half in the first mortgage bonds of the company, and the rest in its capital stock ; that on the 2d of September, 1852, and before the contract was signed, the complainant and defendant met at a hotel in Camden, and it was agreed between them that the latter should execute the contract in the place of the complainant, but under the complainant's contract, for ninety per cent. of the estimates, the remainder of the price to be retained by the complainant as his compensation for his trouble and responsibility under the contract. The complainant then owed the defendant $1,230 for money lent to him by the latter in 1850, which sum, with $5,500 which the defendant agreed to advance to him to enable him to buy a house in Philadelphia, was to be repaid out of the complainant's percentage before he should retain any part of it. The bill further states that, in pursuance of the agreement, the defendant entered upon and completed the work ; that he advanced the $5,500 to the complainant; that the first estimate was returned to the company about the middle of December, 1852, and $10,000 in cash paid thereon, and each succeeding month thereafter estimates were made and cash paid until August, 1853, when the company became embarrassed and unable to pay in cash, but paid in notes and acceptances ; that the $1,230 and $5,500 were repaid to the defendant out of the complainant's percentage of the first cash payments, and that the complainant did not retain his percentage after that money was repaid, merely because, by reason of the embarrassment of the company, the payments from August, 1853, were not made in cash, and the complainant was willing to wait till the completion of the work for the rest of his compensation, and therefore was willing to turn over to the defendant all that was received from the company on construction account, so that the defendant might have all the means available for the prosecution and completion of the work. The work was completed in July, 1854. The bill further states that more than $205,557.13 were, according to the defendant's admission, received by the complainant and paid over by him on account

of the price of the work, and that in November, 1855, after the work was finished, the complainant, being in ill health and about to go abroad on that account, sought and obtained an interview with the defendant, and then read and explained to him a statement, being an approximate summary of the construction account and of their respective interests therein, the latter being stated in accordance with the complainant's claim on that head, and that the defendant expressed his entire satisfaction therewith; that the complainant made a settlement with the company in June, 1855, and received, with the defendant's assent, in part payment of the amount due him from the company under the contract, including extra work, and also including pay for his services as engineer, two thousand two hundred and forty shares of its common stock, amounting, at par, to $112,000; that in 1858 he recovered a judgment against the company for $22,500, besides costs, on claims constituting part of the compensation which the company agreed to pay for the work, and that, with the defendant's consent, he subsequently, in the same year, began a suit in this court, in insolvency, against the company, and in March, 1860, came to a final settlement with the company, with the defendant's consent, by an arrangement which was participated in by the other creditors; and was part of a general agreement by which the company was enabled to fund its debt and avoid the necessity of going into liquidation. In March, 1860, the defendant issued the before-mentioned attachment, and attached all the stocks, moneys and debts then due or coming to the complainant from the company.

The defendant, by his answer, while he admits that he made the agreement in the bill mentioned, to do the work of constructing the road, &c., denies that he agreed to allow the complainant the compensation which the latter claims, but says that, on the other hand, the agreement between them was, that the complainant was to have ten per cent. of the bonds and stocks (in amount, $40,000) to be received by him under the contract, and that the complainant was to compensate him for any damages caused by delay in procuring the right of way for the railroad. He denies that the various suits and settlements were brought and made

with his knowledge, and denies that he ever, in any way, admitted the complainant's claim as made in his bill.

The question now presented for consideration is, whether the complainant was to have for his compensation ten per cent. of the cost of the work or only ten per cent. of the supposed profits. The parties agree that the contract was made by the complainant with the company; that there was no written subcontract with the defendant, and that the complainant was to have a percentage for his compensation; but whether it was to be upon the whole amount of the price or only on the profits, is the subject of dispute.   It is to be remarked that while there is no support of the defendant's version of the agreement between him and the complainant, there is abundant corroboration of that of the complainant.   Apart from the evidence as to what was the customary compensation (which is not competent), it seems quite improbable that a contractor, holding a favorable contract likely to produce a profit of at least $40,000, would be willing to give the advantages of it to a stranger for the comparatively insignificant consideration of ten per cent. upon such profits, especially where, as in this case, those profits could only be realized at the completion of the work, and were then payable, not in cash, but in the bonds and stocks of the company.   The complainant testifies distinctly that his compensation was to be ten per cent. of the whole amount of the estimates.   The written statement mentioned in the bill as having been read by the complainant to the defendant, November, 1855, corroborates him.   There were present when it was read by the complainant to the defendant two other persons, John H. Osborne, the complainant's brother, and Robert Frazer, John H. Osborne's brother-in-law.   They both testify to the fact that the paper was read over by the complainant to the defendant, the former dwelling upon the details, and that it was examined by the defendant, who said, after examining it, that he was perfectly satisfied with it.   Both of these witnesses say that the paper was handed to the defendant, and that he took it and examined it, and after examination handed it back.

Some years afterwards, on the 7th of March, 1860, the de-

Osborne *v.* O'Reilly.

fendant called at the complainant's house in Philadelphia, and asked him to transfer some of the stock which the latter had received in the settlement with the railroad company. The complainant declined to do so until after there should have been a settlement between them, and the defendant said that he was ready to settle then, and inquired how the account stood between them, and thereupon the complainant drew up and gave to him a statement, in which his claim was stated as it had been in the statement of November, 1855. That paper is still in the custody of the defendant. A day or two afterwards he returned a pencil copy of it to the complainant, together with a statement made by himself, dated March 9th, 1860, for a settlement between them, in which he stated the complainant's share of the profits at "ten twenty-seconds per cent.," and his own at "twelve twenty-seconds per cent." By the statement of March 7th, 1860, the complainant made claim, as he did in that of November, 1855, to ten per cent. upon the entire amount of the estimates, and that, too, not only for the work specified in the contract, but for the extra work, the latter amounting, according to the statement, to over $100,000. The defendant, by his statement of March 9th, 1860, allows the complainant not ten per cent. on the amount of the profits, but ten twenty-second parts of the profits of the whole work, while he claims for himself the remainder; and he also charges the complainant with the $1,230 and $5,500 before mentioned. It is observable that in that statement he agrees with the complainant that the percentage was to be on the amount of the estimates, and not the amount of the profits. There is also in one of the defendant's books, his ledger, a statement in his handwriting, in which the complainant is allowed ten per cent. on the estimates of the whole work. He indeed says, in explanation, that that entry was made, as nearly as he can tell, after an effort on the part of the late Thomas P. Carpenter, the original solicitor of the complainant in this suit, for a settlement between the complainant and himself, thus suggesting that it was merely a copy or memorandum of a statement of the complainant's claim, and he fixes the time as sometime in the year 1860. The bill was filed in 1861. It

may be that this suggestion of an explanation of the entry in the ledger ought to be accepted, but the defendant offers no explanation of the paper of the 9th of March, 1860. On the other hand, he declines to admit that it is his handwriting; though it is abundantly proved to be so. There is a strong corroboration of the complainant, too, in the testimony of Philip Quigley, who was connected with the defendant in a contract on a railroad in Pennsylvania, while the latter was engaged in doing the work on the Camden and Atlantic railroad. He testifies that he frequently heard the defendant speak of the construction of the latter road; that the defendant stated to him that the complainant was the contractor, and that he was doing the work on a percentage of some kind, and they would make $50,000 apiece. The defendant, as appears by the statement of March 9th, 1860, made no distinction between work done under the contract and any other work, whether extra work or otherwise, but regarded the whole work as the subject of an account and division of profits between him and the complainant, the only question between them being as to the amount of profits to which each was entitled. It seems quite clear that the extra work is fairly within the bargain. By the last-mentioned paper (that of March 9th, 1860), the defendant deals with the matter as if a partnership in the work existed between the complainant and him, and he estimates their respective shares apparently upon some such principle. But while there is no evidence to support any claim of partnership, there is evidence in the testimony of the defendant himself that none existed, and also that he was willing to join the complainant in a partnership to do the work, but the latter declined. He says that in his first interview with the complainant, he suggested to the latter that he, the defendant, had better join him in the contract, but that the complainant refused, saying that he would not do that.

The complainant and John H. Osborne and Philip Quigley were all recalled as witnesses for the complainant without an order of the court for that purpose, and objection is made to the reception of their testimony on that ground. On the other hand, it is urged that the rule prohibiting the re-examination of

Osborne *v.* O'Reilly.

a witness, except by leave of the court, on the same subject-matter as to which he has already testified, is not now a rule of this court; that many years ago it was made one of the standing rules, but in the revision of the rules in 1872 by the late Chancellor Zabriskie, he omitted it as being in his judgment a hindrance to justice. It is also urged that the cases of *Crawford* v. *Bertholf, Sax. 458 ; Delany* v. *Noble, 2 Gr. Ch. 441 ; Hanson* v. *Pres. Ch. Trenton, 3 Stock. 441,* cited by the defendant's counsel, were all decided while the rule was in existence as a standing rule. However that may be, the decision in those cases is based no less on the policy than on the rules and practice of the court, as will be seen by reference to them. It is an established rule, no less of the courts of law than of this court, and it is manifestly founded on true policy, that a witness cannot, without express leave of the court, be re-examined as to matter as to which he has already been examined. *Gres. Eq. Ev. (54) 69 ; Whart. on Ev.* § *574; Dan. Ch. Pr. 1104.* It appears, however, by the record, that while objection was made to the examination of John H. Osborne and Quigley, on recall, the ground of objection was not stated. Such an objection is not sufficient to exclude the testimony ; for *non constat,* but that if the specific objection had been made, an order of the court would have been obtained. To the re-examination of the complainant the objection was made specifically. It is obviously competent for a party to recall witnesses once sworn and examined in his behalf, for re-examination in rebuttal, without express leave of the court, and, therefore, so far as the testimony of the complainant himself is given on the recall, is in rebuttal, it is competent, but otherwise it is not.

The clear weight of the evidence is in support of the bill, and there will, therefore, be a decree for account accordingly, on the basis of the contract, including the extra work.